UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DAVIS,

        Plaintiff,

Case No. 1:05-CV-100

Hon. Gordon J. Quist

vs.

CORRECTIONAL MEDICAL SERVICES
INC., CRAIG HUTCHINSON, M.D.,
GEORGE PRAMSTALLER, M.D.,
UNKNOWN LEE, R.N., DR. ISAAC,
MCKENNA, R.N., HUM, ROSE PELHAM,
R.N., D. VIHER, N.P., JOHN DOE, and
JANE DOE,

        Defendants.
        _____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is before the court on motions to dismiss filed by defendant Dr. Gamat Isaacs (docket no. 20), defendants Dr. Craig Hutchinson and Correctional Medical Services, Inc. ("CMS") (docket no. 21), defendant nurse practitioner Deborah L. Viher (docket no. 49), and defendants Dr. George Pramstaller, nurse Lee, nurse McKenna and nurse Pelham (docket no. 54).

**BACKGROUND**

Plaintiff alleges that he is hearing impaired and suffers from numerous medical problems, including arthritis in the spine, three spinal surgeries, Hepatitis C, and a duodenal ulcer. Comp. at ¶¶ 18-30. Plaintiff states that his most recent special accommodation notice, issued in August 2004, includes the following accommodations: ground floor room, back brace, standard cane, walker, bottom bunk, single-person room, sink/toilet in room, cotton blanket, tennis shoes, hearing

aid, TDD-TDY phone for hearing impaired, communication assistance (hearing) and risk to heart. Special Accommodation Notice ("SAN") 8/3/04 attached to Compl. as Exh. E.

In his "Jurisdictional Statement," plaintiff states that he is seeking relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Eighth and Fourteenth Amendments. Compl. at ¶¶ 1-2. Plaintiff has set forth thirteen counts.

In Count I, plaintiff alleges that CMS committed medical malpractice which resulted in an injury pursuant to MCL § 600.2912a. In Count II, plaintiff alleges that CMS refused to provide him with proper treatment and care in violation of his constitutional rights. In Count III, plaintiff alleges that Dr. Hutchinson violated his Eighth Amendment rights by denying him: "necessary medical treatment that could be life threatening by refusing to approve [p]laintiff's medical referrals from medical [s]pecialist on his liver;" two weeks of physical therapy by a licensed physical therapist; an epidural block recommended by another doctor; and surgery on his right ear as recommended by a specialist. In Count IV, plaintiff alleges that Dr. Pramstaller as chief medical officer for the Michigan Department of Corrections ("MDOC") is ultimately responsible for plaintiff's medical care. Dr. Pramstaller committed medical malpractice and violated his Eighth Amendment rights by failing to overrule the decisions reached by CMS and Dr. Hutchinson. In Count V, plaintiff alleges that nurse Lee denied him necessary treatment "by not using the skill and care ordinarily possessed by nurses of the profession" and "has been a party to taking away prescribed medical items and medications." In Count VI, plaintiff alleges that Dr. Isaac denied him "necessary medical treatment that could be life threatening by refusing to do follow-up care concerning the possibility of [p]laintiff having liver cancer and allowing nursing staff to cancel

prescriptions that he has written for medications or other health care needs," and that he was injured by the doctor's medical malpractice.

In Count VII, plaintiff alleges that nurse McKenna denied him necessary medical treatment, failed to use the skill and care ordinarily possessed by nurses, was a party to taking away medical items from his SAN, and removed plaintiff's medical file establishing his hearing impairment. In Count VIII, plaintiff alleges that nurse Pelham denied him necessary medical treatment, failed to use the skill and care ordinarily possessed by nurses, and was a party to taking away medical items. In Count IX, plaintiff alleges that nurse practitioner Viher denied him necessary medical treatment, "stopped medications on the advice of nursing staff that she had prescribed for [p]laintiff's stomach problem (a "duodenal ulcer"), and failed to provide the standard of care for general practitioners which resulted in injury to plaintiff. In Count X, plaintiff alleges that "John Doe" denied him necessary medical treatment. In Count XI, plaintiff alleges that "Jane Doe" denied him necessary medical treatment.

In Count XII plaintiff alleges that the Carson City Correctional Facility ("DRF"), the Reception and Guidance Center ("RG&C") in Jackson, MI, the "C-Unit" and CMS are facilities receiving federal funds and governed by the ADA and the Rehabilitation Act. Finally, in Count XIII, plaintiff alleges that defendants "hid behind the color of the law and used their positions" to enforce their acts of discrimination and deliberate indifference against the [p]laintiff."

## DISCUSSION

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468

U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983. Plaintiff seeks relief for violation of the Eighth Amendment, as well as violations of the ADA and the Rehabilitation Act. Plaintiff also alleges medical malpractice or negligence claims under state law against all defendants.

Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). The exhaustion requirement is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. A district court must enforce the exhaustion requirement sua sponte. *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir.) (1998); *accord Wyatt v. Leonard*, 193 F.3d 876, 879 (6th Cir. 1999). The exhaustion requirement, while not jurisdictional, is mandatory and must be addressed in the first instance by the district court in all prisoner civil rights cases before the merits of the case are addressed. *See Curry v. Scott*, 249 F.3d 493, 501 n.2 (6th Cir. 2001); *Wyatt*, 193 F.3d at 879; *Brown*, 139 F.3d at 1104.

The prisoner has the burden of demonstrating exhaustion of his available remedies. *See Brown*, 139 F.3d at 1104. A prisoner must allege and show that he has exhausted all available administrative remedies and should attach to his § 1983 complaint the administrative decision disposing of his complaint, if the decision is available. *Id.* In the absence of written documentation, the prisoner must describe with specificity the administrative proceeding and its outcome so that the court may determine what claims, if any, have been exhausted. *Knuckles El v. Toombs*, 215 F.3d

640, 642 (6th Cir. 2000). In this regard, the Sixth Circuit has found that the district court is not required to hold evidentiary hearings on the issue of exhaustion or "spend a lot of time with each case just trying to find out whether it has jurisdiction to reach the merits." *Id.*

Defendants contend that plaintiff's claims should be dismissed as unexhausted pursuant to 42 U.S.C. § 1997e. I agree.[1] Plaintiff's suit is based upon two grievances: SMN-04-06-00659-12Z and DRF 04-09-1476-12E.

In the first grievance, filed June 10, 2004, plaintiff complained that the nurse practitioner (Viher) ordered tennis shoes for him, that he had not received the shoes and requested that the shoes be delivered to him. Grievance SMN-04-06-00659-12Z, attached to Compl. as App. G. Nurse Pelham responded to this grievance. *Id.* The response indicated that plaintiff's prior prison documented that he was responsible for purchasing his own tennis shoes, that he appeared to be wearing new tennis shoes and that there was no medical reason for him to have another pair of shoes purchased at this time. *Id.* At Step II, the matter was discussed with plaintiff, who explained that he is not allowed to wear his tennis shoes "outside" because he must wear state shoes at those time. *Id.* On July 28, 2004, plaintiff's grievance was resolved at Step II and he was advised that C-Unit health care will order the new shoes. *Id.*

In the second grievance, dated September 6, 2004, plaintiff stated four issues: (1) CMS denied surgery for an inferior perforation of plaintiff's right ear as recommended by a specialist; (2) CMS denied plaintiff an air mattress, epidural block and three weeks of physical

---

[1] In directing the clerk to issue summonses in this matter, the court stated that it "preliminarily has determined that [p]laintiff has satisfied the requirements of the Prison Litigation Reform Act concerning exhaustion of administrative remedies, though the question is not foreclosed at this juncture." Order for Service (3/4/05).

therapy to treat his long-standing history of back problems; (3) nurse practitioner Viher ordered "health care tennis shoes" that were taken away by another nurse (apparently nurse Pelham) and that the grievance was apparently resolved by non-party nurse Kathleen McFarlan; (4) CMS denied nurse practitioner Viher's order that plaintiff be seen by a gastroentologist; (5) CMS turned down a gastro-intestinal ("GI") work-up ordered by the facility's health center. Grievance DRF 04-09-1476-12E, attached to Compl. as App. G. For his relief requested, plaintiff wanted a test for liver and stomach cancer as ordered by nurse practitioner Viher, a "proper diagnosis" for his back problem, an ear, nose and throat specialist to have surgery on his right ear, the physical therapy ordered by Dr. Isaac, a renewed SAN to reflect his special needs, a GI work-up as requested by his doctor, the return of his air mattress and tennis shoes. *Id.*

The Step I response noted that plaintiff's medical needs have been followed and addressed in the chronic care clinic, that the air mattress was not transferred with plaintiff but was replaced and that plaintiff "has an appointment scheduled with the physician, who will determine if any further testing or treatment is needed." *Id.* Then, in his Step II appeal, plaintiff named five new parties: nurse Lee, nurse McKenna, Dr. Pramstaller, Dr. Hutchinson and Dr. Isaac. *Id.* The MDOC advised plaintiff of an extension notice for the Step II Grievance Investigation. *Id.* Plaintiff's complaint did not include a Step II response; however, it appears that he filed a Step III appeal. *Id.*

To meet the exhaustion requirement under 42 U.S.C. § 1997e, a prisoner must exhaust his claim "as to each defendant associated with the claim." *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003). Specifically, the MDOC grievance procedure "requires a prisoner to define the grievable issue at Step I of the grievance process," while "Steps II and III of the grievance process

6

provide a prisoner the opportunity to express dissatisfaction with the response received at the previous step." *Id.* As the Sixth Circuit explained in *Burton*:

> We understand these policies to require that a prisoner seeking to administratively exhaust a claim against a prison official describe the alleged mistreatment or misconduct at Step I of the grievance process. By negative implication, we understand these policies to preclude administrative exhaustion of a claim against a prison official if the first allegation of mistreatment or misconduct on the part of that official is made at Step II or Step III of the grievance process . . . We do not, however, understand these policies to preclude a prisoner from presenting additional factual detail at Step II and Step III that clarifies an allegation made at Step I as a means of justifying an appeal.

*Id.* The prisoner's grievance is not required "to allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Id.* at 575. Rather, the district court should review the Step I grievance to determine whether "a prisoner's Step I problem statement gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

The record reflects that plaintiff's Step I grievance in SMN-04-06-00659-12Z named only the nurse practitioner (Viher). The grievance was apparently referred to nurse Pelham, who responded to the grievance. This grievance, which was limited to plaintiff's failure to receive tennis shoes, named no other defendants and was resolved at Step II. Similarly, the record reflects that plaintiff's Step I grievance, DRF 04-09-1476-12E, named only CMS, nurse practitioner Viher and nurse Pelham. Plaintiff's Step I grievance did not name nurse Lee, nurse McKenna, Dr. Pramstaller, Dr. Hutchinson or Dr. Isaac. Nor did plaintiff include any description of actions taken by the unknown nurses whom he names as defendants John Doe and Jane Doe.

While it appears that plaintiff exhausted his claims with respect to the tennis shoes against nurse practitioner Viher and nurse Pelham, and that he exhausted his additional claims

7

against CMS, Viher and Pelham, plaintiff did not exhaust his claims against the defendants identified in the Step II appeal, i.e., nurse Lee, nurse McKenna, Dr. Pramstaller, Dr. Hutchinson and Dr. Isaac. Where a prisoner fails to name certain defendants in his Step I grievance, and first names those defendants in the Step II or Step III grievance appeal, the prisoner's claims against those later named defendants are unexhausted. *Walton v. Bouchard*, 136 Fed. Appx. 846, 848-49 (6th Cir. 2005); *Burton*, 321 F.3d at 574-75; *Curry*, 249 F.3d at 505. Here, plaintiff filed a multi-paragraph Step II appeal, in which he set forth claims against the nurse Lee, nurse McKenna, Dr. Pramstaller, Dr. Hutchinson and Dr. Isaac.[2] Plaintiff states that all defendants were named in the Step II appeal because he did not have the names available to him when he filed the Step I grievance. Compl. at ¶ 32. Assuming that plaintiff first learned the identities of these additional defendants after filing his Step I grievance, then he should have filed a new grievance naming the additional defendants rather than inserting new claims in his Step II appeal. *See Walton*, 136 Fed. Appx. at 849 (when the MDOC's Step I response alerted prisoner of the prison officials responsible for alleged mistreatment, the prisoner should have filed a new Step I grievance rather than asserting claims against these additional prison officials in his Step II appeal).

Under the definitive total-exhaustion rule announced earlier this year in *Jones Bey v. Johnson*, 407 F.3d 801, 805 (6th Cir. 2005), 42 U.S.C. § 1997e(a) requires "a complete dismissal of a prisoner's complaint when that prisoner alleges both exhausted and unexhausted claims" in his complaint. *Jones Bey*, 407

---

[2] An introductory paragraph to plaintiff's Step II appeal includes the following inaccurate (and self-serving) statement: "I will once again list what, where and who did or did not do [sic] to give me proper treatment and or care as required by law, and in accordance with state and federal statutes." Grievance DRF 04-09-1476-12E. As previously discussed, plaintiff's Step I grievance did not list all of the individuals named in the Step II appeal.

F.3d at 805. Plaintiff has alleged both exhausted and unexhausted claims in his complaint. Accordingly, plaintiff's complaint should be dismissed without prejudice.

## RECOMMENDATION

I respectfully recommend that defendants' motions to dismiss (docket nos. 20, 21, 49 and 54) be **GRANTED** and that plaintiff's complaint be **DISMISSED** without prejudice.


Dated: November 7, 2005     /s/ Hugh W. Brenneman, Jr.
                            Hugh W. Brenneman, Jr.
                            United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).